IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT  DIVISION

| | | |
|---|---|---|
| William E. Singletary, Jr., | ) | Civil Action No. 9:11-2658-MGL-BM |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Adell Dobey, Ronald Carter, Officer | ) | |
| Michael Butts, Corp. Mark Pica, | ) | |
| Lieutenant Mike Cockrell, Captain Chris | ) | |
| Wash, Sergeant Michael Raffield, | ) | **REPORT AND RECOMMENDATION** |
| Lt. Jagger, Lt. Hall, C-O Joshua Jones | ) | |
| C-O Prince, Deputy Florida, Sgt. Kyther | ) | |
| Potts, Southern Health Partners a/k/a | ) | |
| Health Partner's, Dr. Tami Y. Massey, | ) | |
| and Edgefield Hospital, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C.  § 1983.

Plaintiff, who was formerly an inmate being held at the Edgefield County Detention Center, alleges

violations of his constitutional rights by the named Defendants.[1]

The Defendants Tami Massey and Southern Health Partners filed a motion for

summary judgment pursuant to Rule 56, Fed.R.Civ.P. on February 7, 2013.  As the Plaintiff is

proceeding pro se, a Roseboro order was entered by the Court on February 8, 2013, advising

---

[1]In addition to the Defendants set forth in the caption hereinabove, the named Defendants in
the case originally also included the Edgefield Sheriff's Department, County Magistrate Judge
Brenda Carpenter, and the Edgefield County Detention Center itself.  Those three Defendants were
dismissed as party Defendants by Order filed December 21, 2011.  See Court Docket No. 21; see also
Court Docket No. 26.



Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response.  Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted.  Thereafter, the Defendants Ronald Carter, Michael Butts, Mark Pica and Mike Cockrell filed a motion for summary judgment on February 11, 2013, following which a second <u>Roseboro</u> order was entered on February 12, 2013.  A motion for summary judgment was then also filed by the Defendants Adell Dobey, Deputy Florida, Lt. Hall, Lt. Jagger, Joshua Jones, Kyther Potts, Correctional Officer Prince, Michael Raffield and Chris Wash on February 25, 2013.  A motion for summary judgment on behalf of the Defendant Edgefield Hospital (and also apparently on behalf of the Defendant Massey) was also filed that same date.  A third <u>Roseboro</u> order was then entered on February 26, 2013.

The time for Plaintiff to file a response in opposition to the Defendants' motions expired, with no response in opposition having been filed.  However, in light of Plaintiff's <u>pro se</u> status, the Court entered yet another Order on April 3, 2013, granting Plaintiff an additional ten days to file a response to the motions for summary judgment, and specifically advising Plaintiff that if he failed to do so, this action would be recommended for dismissal for failure to prosecute.  <u>See</u> Order (Court Docket No. 146).  On April 11, 2013, Plaintiff called the Clerk's Office to discuss his case, and on April 15, 2013 filed a "Response" to the Court's Order.  The Defendants' motions are now before the Court for disposition.[2]

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.  The Defendants have filed motions for summary judgment.  As these are dispositive motions, this Report and Recommendation is entered for review by the Court.



**Background and Evidence**

Plaintiff alleges in his verified complaint[3] that he is an African American and that while he was incarcerated at the Edgefield County Detention Center he was subjected to prejudice and racial discrimination.  Plaintiff further alleges that his First Amendment rights were violated, and that the Defendants attempted to bring "physical & bodily harm" to him.  Plaintiff alleges that the Defendants Butts and Wash referred to him as "Boy", and that on a few occasions he was referred to as a "Nigger".  Plaintiff also alleges that the Defendant Officer Michael Butts stopped his car for petty offenses such as not having a blinker on and referred to him and his roommate as "Boy".  Plaintiff also references a previous lawsuit he had filed about having been framed for crimes he says he did not commit by the Defendants Cockrell, Pica, Raffield, Florida, Duncan, Butts, Wash, as well as by an "Officer Densmore" and a "Deputy Durran".  Plaintiff alleges he was locked up to prevent him from timely filing necessary documents in his court cases (apparently referring to civil cases).  Plaintiff also complains that "some of the Defendants" stole mail out of his P.O. Box and/or reviewed his legal mail, and that he filed a complaint with the Edgefield post office concerning this matter.  Plaintiff also complains that the Defendant Captain Wash went to his house and asked him to drop a lawsuit he had filed against the Sheriff's Department.

Plaintiff alleges that while he was unconscious due to being over medicated by some of the Defendants (which also caused serious damage to his head and body when he hit the concrete

---

[3]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Plaintiff has filed a verified Complaint.  Therefore, the undersigned has considered the factual allegations set forth in the verified Complaint in issuing a recommendation in this case.



floor of the Detention Center), the Defendant Butts informed another correctional officer or paramedic that the Edgefield Police Department had been receiving the mail out of his P. O. Box for over six months.  Plaintiff alleges that when he filed a complaint about this issue, the Defendants Raffield, Florida, Cockrell, Pica, "etc." filed "bogus charges" against him for crimes he did not commit, causing him to be falsely arrested.

Plaintiff alleges that the Defendants Massey, Jones, Southern Health Partners, Jagger, Hall, Dobey (as well as some others who are not named as Defendants in this case) all tried to bring "bodily harm" to him on five or six different occasions, which almost resulted in his death.  Plaintiff alleges that the Defendant Massey and Raymond Easler (who is not a named Defendant) were the only ones who had the authority to prescribe medication, and that on several occasions the medications they had prescribed (dispensed by the Correctional Officers) caused him to become unconscious and have to go to the emergency room for injuries to his head after he had fallen on the concrete floor.

Plaintiff also complains that the Defendants Dobey, Wash, Jagger, and Hall made sure that he was segregated from other inmates while he was incarcerated and that they misclassified and placed into a dorm that his "crime didn't ask for".  Plaintiff alleges that this resulted in him being  placed with violent killers and murders, even though he has never been convicted of or sentenced to a violent crime.  Plaintiff alleges that the Defendants placed him in the dorm with these other inmates hoping that he would be harmed or killed.

Plaintiff also complains that the food he received at the Detention Center was "harmful", containing high glucose and starch, which caused him to pass out on the floor.  Plaintiff also complains that he was placed in a cell that was "single, dark, cold & smelly".  Plaintiff alleges



that the Defendant Potts harasses him and violated his First Amendment rights by not allowing him to exercise his religious practices, and that the reason he is constantly being incarcerated is to prevent him from timely meeting the filing requirements of his civil lawsuits. Plaintiff also complains that the Defendant Jones has been releasing his medical information in violation of federal law, and that his "personal mail and legal mail was and is being violated by some of the Defendants".

Plaintiff alleges that even though he has had two strokes and suffers from hypertension, correctional officers pick at and torment him, and that the correctional staff as well as the Defendants Massey, Jones, Prince, Hall and Jagger provide him with improper medication resulting in serious health problems, and are also keeping him segregated away from other inmates. Plaintiff also complains about how his car was searched, and that the Defendants harassment of him is an attempt to drain him financially. Plaintiff alleges that the Defendant Edgefield Hospital falsified his medical records to help their employee, Tami Massey, after he was admitted due to extreme high dosage of medication. Plaintiff alleges that the hospital also released him when he should not medically have been released due to the improper medications various Defendants had given him, but that he was released because the nurses had become annoyed with him. Plaintiff further complains that some of the Defendants are stalking him and staking out his house in order to harass and be cruel to him.

Plaintiff asks that the Defendants be required to apologize to him, that a new jail be built and additional staff hired, that proper dietary requirements be followed, that the health care provided at the Detention Center be "corrected", that various Defendants be terminated, and that he be awarded monetary damages. See generally, Plaintiff's Original Verified Complaint. Plaintiff has



attached to his Complaint copies of letters he has written to various officials and/or Defendants.

In an amendment to his Complaint filed October 24, 2011,[4] Plaintiff states that his medical issues are now being reviewed by several different specialists at the hospital, and reiterates many of the allegations previously asserted with respect to the medical care and general conditions of confinement he endured while at the Detention Center. Much of this amendment is incomprehensible.

On January 18, 2012, Plaintiff filed some material with the Court indicating that he has or had a lawsuit pending in state court which raised many of the same issues involved in this federal action. See Court Docket No. 48. On September 10, 2012, Plaintiff filed a document in opposition to a previously filed motion for summary judgment[5] which refers to a section of the South Carolina Code of Laws and citing to the text of that statute (which apparently deals with attempted murder). See Court Docket No. 119. On September 21, 2012, Plaintiff filed another response to the previously filed motion for summary judgment, wherein he again cites to a statute of the South Carolina Code of Laws, as well as various other legal citations (such as law journals, case notes, and the like). See Court Docket No. 121.

In support of summary judgment in the case, the Defendants have submitted numerous affidavits and exhibits. First, the Defendant Massey argues that Plaintiff filed an essentially identical lawsuit against her in state court, which was dismissed on summary judgment. See Defendants' Exhibit (Court Docket No. 131-1). Massey (as well as the Defendant Southern

---

[4]See Court Docket No. 11; see also Court Docket No. 16.

[5]That previously filed motion for summary judgment was subsequently mooted after this case was stayed. See Court Docket Nos. 114, 127.



Health Partners, apparently her employer) argue that Plaintiff is now precluded from relitigating his claim against these Defendants that was litigated or should have been litigated in that state action, and that Plaintiff's claims against them are therefore barred by the doctrine of res judicata.

The Defendant Massey has also submitted an affidavit (Court Docket No. 131-4) in which she attests that she is a medical doctor and is the physician for the Edgefield County Detention Center. Massey attests that she first met the Plaintiff as a private patient of another physician, and that after that other physician left the practice, Plaintiff became her patient. Massey attests that Plaintiff has a lengthy medical history, including HIV, Hepatitis C, diabetes mellitus type 2, chronic low back pain, migraines, depression, bipolar disorder, seizures and strokes, as well as many other complaints, and that he also has a psychiatric history which includes bipolar disorder and borderline personality. Massey attests that she saw the Plaintiff in the Edgefield emergency room to clear him to go to jail after his arrest, at which time she told him that the jail had "med pass" only twice per day and that this would necessitate some change in his medication regimen. Massey attests that Plaintiff's medications were usually given to him three times a day, which was changed to twice per day but maintaining the same total daily doses.

Massey further attests that she assured that Plaintiff's medications were otherwise correct, although some substitutions might have to be made for formulary. Massey attests that at no time did Plaintiff state that he was afraid he was getting the wrong medications or wrong doses, that during the period of his incarceration he had multiple trips to the ER apparently as a result of multiple complaints, that at the request of Nurse Easler and Lt. Jagger she wrote a request to Edgefield County Sheriff Dobey that Plaintiff be released for medical reasons, and that after Plaintiff's release he was seen in her office before being arrested again. Massey attests that during

7



Plaintiff's hospitalizations she prescribed the necessary medications for his various ailments, and that at no time was she deliberately indifferent to Plaintiff's medical needs. See generally, Massey Affidavit.

The Defendants Massey and Southern Health Partners have also provided copies of various receiving and screening documents from the jail, a copy of Plaintiff's signed consent for treatment, a copy of Plaintiff's drug administration records, as well as treatment notes showing the numerous occasions on which Plaintiff was seen for his medical complaints and showing the treatment provided. See generally, Exhibit (Court Docket No. 131-3). See also Court Docket Nos. 130-1, 130-2.

The Defendant Ronald Carter has submitted an affidavit wherein he attests that he is the Chief of Police for the Town of Edgefield. Carter attests that the first time Plaintiff was arrested by a member of the Edgefield Police Department was on an arrest warrant that had been issued out of Fulton County, Georgia. See also, Exhibit A to Carter Affidavit (Incident Report of March 26, 2007). Carter further attests that on April 18, 2008 Plaintiff was ticketed by the Defendant Michael Butts, a police officer, for an open container violation, to which Plaintiff pled guilty and paid a $55 fine. Carter attests that on June 12, 2010 Plaintiff was stopped and ticketed for speeding, at which time he was also arrested for failing to update the address on his driver's license. Carter attests that Plaintiff was found guilty at trial and was credited for time served for both of these charges. On July 14, 2010, Plaintiff was again arrested for failing to update the address on his driver's license, a charge that was bound over to the court of general sessions and which resulted in an indictment being issued. Carter attests that this charge was ultimately nolle prossed by the Eleventh Circuit Solicitor's Office.



Carter attests that on July 15, 2010 several arrest warrants were served on the Plaintiff, which included four charges for possession of drugs within proximity of a school and three charges of distributing drugs within proximity of a schools. Indictments were also returned against the Plaintiff on each of these charges by the Edgefield County Grand Jury. Carter attests that Plaintiff was subsequently found guilty in Magistrate's Court of possession of marijuana, and that the remaining charges were nolle prossed by the Solicitor.

With respect to Plaintiff's claim that members of the Edgefield Police Department have tampered with his mail while he has been incarcerated, Carter attests that he has not interfered in any way with the Plaintiff's mail service, nor is he aware that any member of the Edgefield Police Department has done so. With respect to Plaintiff's claim that he has been arrested in order to somehow interfere with his ability to prosecute civil matters, Carter attests that every time Plaintiff has been detained by members of the Edgefield Police Department his detention has been supported by probable cause. See generally, Carter Affidavit, with attached Exhibits.

The Defendants have also provided copies of numerous court disposition sheets, indictments, case history sheets, arrest warrants, and sentencing documents showing Plaintiff's extensive criminal history and history of arrests and prosecution on various charges. See Exhibits (Court Docket Nos. 135-2, pp. 1-59).

The Defendant Michael Butts has submitted an affidavit wherein he attests that he is a Corporal with the Edgefield Police Department, and that he has arrested or ticketed the Plaintiff on two occasions. Butts attests that in March 2007 he arrested the Plaintiff on an outstanding warrant from Fulton County, Georgia, and that on April 18, 2008 he ticketed Plaintiff for transporting an alcoholic beverage in a motor vehicle with the cap or seal on the container open or



broken.  See also, attached Exhibit A to Butts Affidavit (arrest and ticketing documents).  Butts further attests that he has never tampered with Plaintiff's mail while he has been incarcerated, nor is he aware of any other member of the Edgefield Police Department having done so, that Plaintiff's arrests had nothing to do with Plaintiff prosecuting civil matters in court, and that no action he has taken against the Plaintiff has had anything to do with Plaintiff being an African American.  See generally, Butts Affidavit, with attached exhibits.

The Defendant Mark Pica has submitted an affidavit wherein he attests that he is a Sergeant for the Edgefield Police Department.  Pica attests that April 2010, a confidential informant supplied him with information that Plaintiff was involved in distributing illegal narcotics, and that on three separate occasions the confidential informant, working with the Edgefield Police Department, conducted controlled buys of marijuana from the Plaintiff.  Copies of the incident reports completed as a result of these controlled narcotics buys are attached to Pica's affidavit as Exhibit A.  Pica attests that, as a result of these controlled purchases and the ensuing investigation, arrest warrants were obtained against the Plaintiff, and that Plaintiff was arrested on July 15, 2012.  Pica attests that subsequently true billed indictments were returned against the Plaintiff on each of these charges by the Edgefield County Grand Jury.  Pica attests that the Plaintiff was subsequently found guilty at trial on a possession of marijuana charge, with the rest of the charges being nolle prossed by the Solicitor's Office.  Pica attests that none of the actions he has taken with respect to the Plaintiff are because Plaintiff is an African American, that he is not aware of any member of the Edgefield Police Department tampering with Plaintiff's mail while he was incarcerated, nor were any of these actions taken in an effort to interfere with Plaintiff's ability to prosecute civil matters.  See generally, Pica Affidavit, with attached exhibits.



The Defendant Mike Cockrell has submitted an affidavit wherein he attests that he is a Lieutenant with the Edgefield Police Department, and that with respect to any contact he has had with the Plaintiff during the course of his work in investigating criminal activity, that contact was for no other purpose than to properly conduct police activities. Cockrell attests that with respect to each time Plaintiff has been arrest or ticketed by the Edgefield Police Department, each of those incidents have been supported by probable cause as is demonstrated by the files maintained by the Edgefield County Clerk of Court and the Edgefield County Magistrate Court (see exhibits previously referenced, <u>supra</u>). Cockrell attests that no actions taken against the Plaintiff have been due to the fact that he is an African American, that he is not aware of any members of the Edgefield Police Department having tampered or interfered with the Plaintiff's mail while he was incarcerated, nor have any actions taken against the Plaintiff been in an effort to interfere with Plaintiff's ability to prosecute civil matters. <u>See</u> <u>generally</u>, Cockrell Affidavit, with attached exhibits.

The Defendant Polly Hall has submitted an affidavit wherein she attests that she is a Lieutenant with the Edgefield County Sheriff's Department, and is the jail administrator for the Edgefield County Detention Center. Hall attests that Plaintiff was incarcerated at the Edgefield County Detention Center on numerous occasions between July 15, 2010 and October 31, 2011. Hall has attached to her affidavit copies of numerous documents relating to Plaintiff's incarceration, including copies of booking reports, medical progress notes detailing the care and treatment Plaintiff received for various medical complaints while incarcerated, medical records showing the care Plaintiff received while at the Edgefield County Hospital, and outside patient referral forms. Hall attests that these documents show that Plaintiff received timely and appropriate medical care for his complaints as well as adequate followup for any complaints during his periods of incarceration at



the Edgefield County Detention Center.  See generally, Hall Affidavit, with attached exhibits.

The Defendant Chris Wash has submitted an affidavit wherein he attests that he is a Captain with the Edgefield County Sheriff's Department, and that any time Plaintiff has been arrested by the Sheriff's Office or Sheriff's Deputies, such arrests were based upon probable cause and valid arrest warrants.  Wash further attests that anytime Plaintiff was detained by the Edgefield County Sheriff's Officer or at the Edgefield County Detention Center, such detention was based upon probable cause and valid arrest warrants, and that he [Wash] never engaged in any name calling as alleged in the Complaint.  See generally, Wash Affidavit.  See also Exhibits [Edgefield County Judicial Department case records showing Plaintiff's case history, as well as various associated court documents (ticketing sheets, indictments, sentencing sheets, and the like)](Court Docket Nos. 141-4, 141-10).

In a supplemental affidavit submitted by the Defendant Massey, Massey attests that due to several visits to the ER for complaints of seizure activity, Plaintiff was placed in a cell designated for medical observation.  Massey attests that the medical observation cell is equipped with a camera which is monitored twenty-four hours a day, seven days a week by an officer at the Detention Center.  Massey attests that Plaintiff was placed in the observation cell for his own safety, as none of the seizure activity Plaintiff complained of had been witnessed by the staff of the Center.  Massey attests that medical observation in no way restricted Plaintiff's rights or privileges.  Finally, Massey attests that at no time did Plaintiff fulfill the obligation of completely exhausting his administrative remedies which were available to him through a grievance procedure at the jail.  See generally, Massey Supplemental Affidavit (Court Docket No. 141-6).

The Defendants have also submitted an affidavit from Ray Easler, who attests that



he was the Medical Team Administrator at the Edgefield County Detention Center during the time period of Plaintiff's complaint, and that he is licensed practical nurse. Easler attests that Plaintiff was always treated fairly, and that with respect to those medical conditions observed by him and by Dr. Massey, neither he nor Dr. Massey was ever deliberately indifferent to any of Plaintiff's medical complaints. Easler further attests that the Edgefield County Detention Center has a mechanism for filing grievances in order for detainees to seek redress, and that he does not recall any grievances ever having been filed by the Plaintiff and, consequently, to his knowledge Plaintiff never exhausted his administrative remedies. <u>See</u> <u>generally</u>, Easler Affidavit (Court Docket No. 141-7). <u>See</u> <u>also</u> Easler Affidavit (Court Docket No. 141-8).

Finally, the Defendants have submitted an affidavit from Patricia Robinson, who attests that she is the Chief Executive Officer at the Edgefield County Hospital. Robinson attests that Plaintiff has, on occasion, been a patient at the Edgefield County Hospital, and that she is not aware that any employee of the hospital has been deliberately indifferent to any serious medical need of the Plaintiff, or violated Plaintiff's constitutional rights in any way. <u>See</u> <u>generally</u>, Robinson Affidavit. The Defendant Hospital has also provided copies of orders of dismissal from Plaintiff's state case against these same Defendants. <u>See</u> Exhibits (Court Docket No. 142-5 - 142-6).

In his response filed to the Defendants' motions, Plaintiff again cites to several state statutes purportedly dealing with murder, complains that a state circuit judge who was involved in his state cases was related to a county magistrate who handled some of his state court matters, complains that his state court prosecutions have been due to race discrimination, complains about how the undersigned United States Magistrate Judge has handled this case, discusses some incidents allegedly involving the wife of the Mayor of Edgefield, and asks that his case be allowed to proceed



to trial. Plaintiff has attached as exhibits to his filing, copies of what are represented to be newspaper articles dealing with the suspension of an un-named Edgefield police officer.[6]

### Discussion

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P. Further, while the Federal Court is charged with liberally construing a complaint filed by a <u>pro</u> <u>se</u> litigant to allow the development of a potentially meritorious case, <u>see</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the evidence and arguments

---

[6]In a subsequent letter received by the Court on April 17, 2013 (Court Docket No. 151), Plaintiff discusses his receipt (or possible non-receipt) of certain mailings to him. At one point he appears to assert that he has never received the motions for summary judgment filed by the Defendants in his case, although he also separately discusses having received "various large envelopes" from defense counsel. In any event, the Court is constrained to note that Plaintiff has received the Court's filings, and that these filings were all mailed to the same address as is shown on Defendants' certificates of service, which is the address Plaintiff has himself provided to the Court as being his address. The Clerk's office has also confirmed with defense counsel that none of the motions for summary judgment mailed to the Plaintiff have ever been returned as undelivered.



presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.

## I.

First, insofar as Plaintiff is attempting to litigate in this action the same claims he asserted against one or more of these Defendants in lawsuits filed in state court, the doctrines of res judicata and collateral estoppel prevent a party from re-litigating in a subsequent lawsuit an issue that was or should have been litigated and determined in a prior action. Briggs v. The Newberry School District, 838 F.Supp. 232, 235 (D.S.C. 1992)[Res judicata precludes a party from litigating in a second action identical claims against the same parties or their privies on which a final determination on the merits was issued]; Stone v. Roadway Express, 627 S.E.2d 695, 698 (S.C. 2006)["Collateral estoppel prevents a party from re-litigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action"] (quoting Jinks v. Richland County, 585 S.E.2d 281 (S.C. 2003)); cf. United States v. Mendoza, 464 U.S. 154, 159 n. 4 (1984)["Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against . . . a different party"]; Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 (1979). Therefore, to the extent Plaintiff is attempting to obtain a "second bite at the apple" by pursuing identical claims in federal court that he has previously prosecuted in state court, those claims are subject to dismissal.

## II.

Plaintiff's claims (whether asserted in a prior state court action or not) are also subject to dismissal for the simple fact that he has provided no evidence whatsoever to support the



general and conclusory allegations of his Complaint.[7]  See House v. New Castle County, 824

F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim].

With respect to his claims concerning his medical care, in order to avoid summary judgment Plaintiff

would need to have submitted evidence sufficient to create a genuine issue of fact as to whether any

named Defendant was deliberately indifferent to his serious medical needs.  Estelle v. Gamble, 429

U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d

179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d

318 (4th Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990).[8]  Plaintiff has failed to submit

any such evidence.  Indeed, except with respect to the  Defendants Massey, Southern Health

Partners, and Edgefield Hospital, Plaintiff has not set forth any allegations that any of the other

Defendants were even involved in his medical care (other than perhaps through the administering

of medications prescribed by Dr. Massey), or that any of these other Defendants made any decisions

about what type of care and treatment Plaintiff was to receive.  Therefore, none of these other named

---

[7]While two of the Defendants mentioned in their affidavits that Plaintiff had not "completely" exhausted his administrative remedies, no further details were provided with respect to this affirmative defense.  Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant].  Therefore, the undersigned has proceeded to address the merits of Plaintiff's claims.

[8]Since Plaintiff was a pre-trial detainee during the time period set forth in the complaint, his claims are evaluated under the due process clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 (1979).  However, for purposes of consideration of Plaintiff's claims, the standard of whether Plaintiff received constitutionally adequate medical care and/or his conditions of confinement meet constitutional muster is essentially the same as that of a convicted prisoner.  See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir.  1988)[Holding that the 14th Amendment guarantees at least 8th Amendment protections]; Estate of Miller, ex. Rel. Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012)["The same standard applies for determining claims of deliberate indifference to the serious medical conditions of pretrial detainees and incarcerated individuals, though pursuant to the Fourteenth Amendment for pretrial detainees rather than the Eight Amendment."].



Defendants are subject to any liability for Plaintiff's claims arising out of his medical care. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel]; see also Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997 WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer v. Brennan, 511 U.S. at 837.

Even with respect to the Defendants Massey, Southern Health Partners, and Edgefield Hospital,[9] there is no evidence before the Court to show that any of these Defendants violated

---

[9]In order to state a claim for alleged constitutional violations under 42 U.S.C. § 1983, Plaintiff must show that the Defendant sued for such violations was a "person" who could, and did, act under color of state law. See 42 U.S.C. § 1983; Monroe v. Page, 365 U.S. 167 (1961); see generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1230 (2002). It is well settled that only "persons" may act under color of state law; therefore, a defendant in a § 1983 action must qualify as a "person." Based on these authorities, it is unclear whether the "Edgefield Hospital" is even a proper party Defendant because it is arguably a group of buildings and/or facilities, not a "person". Inanimate objects such as buildings, facilities, and grounds do not act under color of state law. See Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D. Va. 1999)("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301(E.D. N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). However, as a county hospital facility, if a proper Defendant was named such as the hospital's governing body, it could be subject to suit for damages under § 1983.

It is even less clear what the potential liability might be for the Defendant Southern Health Partners (a private company), but to the extent it had a contract with the County or Sheriff's office to provide medical care to prisoners at the county jail, the possibility of liability under §1983 is at least sufficient to further analyze any culpability this Defendant may have. Cf. Rhea v. Gerold, No. 09-818, 2009 WL 1346139, at * 3 (D.S.C. May 12, 2009)[Addressing claims against Care Center by using § 1983 analysis]; Munoz v. Providence Hospital, et al., No. 10-1899, 2010 WL 3699883 [same]; Holly v. Scott, 434 F.3d. 287, 292, n. 3 (4th Cir. 2006)[Dismissing Bivens claim against GEO Group, which provided medical care to federal prison inmates at a privately run facility pursuant to (continued...)



Plaintiff's constitutional rights. The Defendants have provided affidavits from medical professionals (both Massey, a physician, as well as from Easler, a licensed practical nurse and medical director at the jail), in addition to voluminous medical records, all reflecting that Plaintiff received prompt and appropriate care for his medical problems and complaints. By contrast, Plaintiff has presented no medical evidence whatsoever in support of his allegations that he received constitutionally inadequate medical care. Under these facts, the mere allegations of Plaintiff's Complaint, standing alone and without any supporting evidence, are simply not sufficient to allow this claim to proceed as a constitutional violation for deliberate indifference to a severe medical condition. Green v. Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate indifference claim].

While Plaintiff may not agree with the extent and nature of the medical care he received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally adequate medical care or attention, otherwise provide no supporting evidence other than his own subjective opinion, and expect to survive summary judgment, particularly when the Defendants have submitted medical records as well as sworn testimony from medical professionals which refute his

---

[9](...continued)
a contract with the Federal Bureau of Prisons, but declining to decide whether employees of a private prison facility under contract with a state are subject to liability under 1983]; West v. Atkins, 487 U.S. 42, 48 (1988)[Holding that private physicians that contracted with the State to provide medical care to prisoners were state actors because they were hired to fulfil an obligation - medical care - which was traditionally filled by the State]; Jones v. Correctional Care Solutions, No. 09-269, 2010 WL 2639788 at * 6 (D.S.C. June 7, 2010)[Declining to recommend dismissing Correctional Care Solutions on the basis that it did not act under color of state law], adopted by, 2010 WL 2926178 (D.S.C. July 23, 2010), aff'd, 397 Fed. Appx. 854 (4th Cir. Oct. 6, 2010).



claims. See House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even though pro se litigants are held to less stringent pleading standards than attorneys the court is not required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; see Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what independent medical experts are for."]); Levy, No. 96-4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of and disregards' an excessive risk to inmate health or safety.'"].  Plaintiff's personal opinion notwithstanding, nothing in the evidence and exhibits before the Court gives rise to a genuine issue of fact as to whether any named Defendant was deliberately indifferent to Plaintiff's serious medical needs.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances].  Therefore, Plaintiff's medical claim is without merit and should be dismissed.

### III.

Insofar as Plaintiff complains that any conduct by the Defendants interfered with his access to the Courts, in order to proceed with this claim Plaintiff must have evidence to show that he was prejudiced in a pending court proceeding because of improper conduct or actions by the Defendants.  Magee v. Waters, 810 F.2d 451, 452 (4th Cir. 1987) ["Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"]; Gee v. Pacheco, 627 F.3d 1178, 1191 (10th Cir. 2010)["[A] prisoner must demonstrate actual injury from interference with his access to the courts - that is, that



19

the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement."].  Plaintiff has provided no evidence to show that any conduct by the Defendants prejudiced him in any pending legal case.  Rather, he just complains that their intent in arresting or otherwise harassing him was to retaliate against him for filing civil lawsuits.  Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) [Dismissal of access to court claim proper where inmate relied on conclusory allegations and failed to identify any actual injury]; see also Section V, infra.  This claim is therefore also without merit.  Johnson v. Reno Police Chief, 718 F.Supp. 36, 38 (D.Nd. 1989)["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"]; Hause v. Vaught, 993 F.2d 1079, 1084-1085 (4th Cir. 1993); see Lewis v. Casey, 518 U.S. 343, 349-353 (1996)[Inmate alleging denial of access to the courts must be able to demonstrate "actual injury" caused by the policy or procedure at issue].

## IV.

As for Plaintiff's complaints about his mail, Plaintiff has provided no evidence to show that any named Defendant, or anyone else, ever interfered with his mail while he was incarcerated at the Edgefield County Detention Center, whether legal mail or regular mail.  Rather, Plaintiff just claims that they did so.  See House, 824 F.Supp. at 485 [Plaintiff's conclusory allegations insufficient to maintain claim].[10]  There is simply no evidence to support Plaintiff's

---

[10]Further, even assuming Plaintiff's non-legal mail may have been opened while he was an inmate at the jail, there is nothing improper about jail officials opening mail to confirm that it does not contain contraband before delivering the mail to a prisoner.  Couch v. Jabe, No. 11-34, 2012 WL 3043105 at * 7 (W.D.Va. July 25, 2012)["Prison officials undoubtedly have the right to screen mail entering a correctional facility to prevent the introduction of items that undermine security, good

(continued...)



general and conclusory claim that one or more of the Defendants has been interfering with his mail such as to allow this claim to proceed.  See Johnson, 718 F.Supp. at 38 ["Even a pro se plaintiff may not rely wholly on conclusory allegations, but rather must allege facts which, if proven would entitle the plaintiff to relief"].

**V.**

To the extent Plaintiff is asserting that one or more of the Defendants' actions were taken against him out of retaliation for Plaintiff filing lawsuits, none of the exhibits provided to the Court documenting Plaintiff's numerous criminal charges, indictments, court proceedings, sentencings, and the like, constitutes evidence to support Plaintiff's claim that his various arrests and incarcerations, or any other actions taken against him or to which Plaintiff objects, were in retaliation for Plaintiff having filed civil lawsuits.  See Atkinson v. Bohn, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam) [speculative and conclusory allegations cannot support retaliation claim]; LaCroix v. Williams, No. 97-0790, 2000 WL 1375737 at *4 (W.D.N.Y. Sept. 21, 2000) ["Plaintiff's conclusory allegations aside, there is simply nothing in the record to support his version of the facts and plaintiff's claim for retaliation fails"].  Therefore, this claim should be dismissed.  Wright v. Vitall, No. 91-7539, 1991 WL 127597 at**1 (4th Cir. July 16, 1991) [Retaliation claim based on mere conclusory statements cannot withstand defendants' summary judgment motion]; Harris v. Ostrout, 65 F.3d 912, 916 (11th Cir. 1995)[case dismissed where Plaintiff produced nothing beyond his own conclusory allegations suggesting that prison official's actions were motivated by a retaliatory animus]; Woods v. Edwards, 51 F.3d 577, 580-581 (5th Cir. 1995) [summary judgment

---

[10](...continued)
order, discipline, or rehabilitation."].

21

affirmed where inmate offered no evidence other than his personal belief that the alleged retaliatory actions were based on his exercise of his rights].

## VI.

With respect to Plaintiff's allegation that one or more of the Defendants may have used inappropriate or offensive language when talking to him, it is well established that the use of vile or vulgar language is not a basis for a § 1983 claim.  Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995)["Verbal assault, standing alone, is not a . . . cognizable injury in a 1983 civil rights action"]; Sluys v. Gribetz, 842 F.Supp. 764, 765 n.1 (S.D.N.Y. 1994), aff'd., Sluys v. Gribetz, 41 F.3d 1503 (2d Cir. 1994);  Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Batista v. Rodriguz, 702 F.2d 393, 398 (2nd Cir. 1985); Ajaj v. United States, 479 F.Supp. 2d 501, 538 n. 16 (D.S.C. 2007);  Morva v. Johnson, No. 09-515, 2011 WL 3420650 at * 7 (W.D.Va. Aug. 4, 2011)[Plaintiff failed "to establish that a Defendant violated a constitutional right by harassing, threatening, or ridiculing him . . . ."]; DePaoa v. Taylor, No. 10-398, 2011 WL 2445859 at * 9 (W.D.Va. June 15, 2011)["[A]n institutional employee's verbal harassment of an inmate or idle threats made to an inmate, even if they cause an inmate fear, anxiety or discomfort, do not present a claim of constitutional magnitude."], adopted by, 2011 WL 3105336 (W.D.Va. July 25, 2011), aff'd., 470 Fed. Appx. 186 (4th Cir. Mar. 27, 2012).  Therefore, while the Court (assuming Plaintiff's allegations to be true for purposes of Defendants' motions) certainly does not approve of or condone such conduct or activities, they provide no basis for a claim for damages under § 1983. Musto v. Trinity Food Service, Inc., No. 07-231, 2010 WL 3565723 at * 13 (M.D.Fla. 2010)[Although "racial epithets are repulsive and generally the weapon of the uncivilized, . . . verbal



harassment does not state a claim for relief in a federal civil rights action."].  This claim is subject to dismissal.

## VII.

The remainder of Plaintiff's assertions are essentially a hodge podge of varying conclusory claims and allegations, none of which are supported by evidence sufficient to allow these claims to proceed.  During the time period at issue, Plaintiff was a prisoner being held in a county jail, not a hotel.  It is to be expected that conditions of confinement under such circumstances are often times less than ideal.  Hadley v. Peters, No. 94-1207, 1995 WL 675990 *8 (7th Cir. 1995), cert. denied, 116 S.Ct. 1333 (1996) ["prisons are not required to provide and prisoners cannot expect the services of a good hotel."] (quoting Harris v. Fleming, 839 F.2d at 1232, 1235 (7th Cir. 1988).  Therefore, the only issue for this Court to decide is whether the evidence presents a sufficient question of fact that the conditions under which Plaintiff was confined violated his constitutional right to be free from conditions so deplorable that they could be deemed cruel and unusual punishment.  As with Plaintiff's other claims, there is no such evidence.

To the extent Plaintiff was unhappy with having been placed in the medical observation cell, even assuming for purposes of summary judgment that this placement deprived him of some privileges or amenities he might otherwise have had if he was in the general population (which is denied by Massey in her Affidavit), that is not a constitutional violation.  Cf. Kidwell v. Buchanan, No. 93-15056, 1993 WL 230224 at **1 (9th Cir. June 29, 1993) [Where temporary restriction of amenities was found not to be cruel and unusual punishment].  Plaintiff's dissatisfaction with his security or custody status is also, by itself and without any evidence showing a constitutional violation occurred, insufficient to maintain a claim. Cf. Marchesani v. McCune, 531



F.2d 459, 462 (10th Cir. 1976), <u>cert</u>. <u>denied</u>, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; <u>Neals v. Norwood</u>, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."]. Otherwise, Plaintiff's claims are so general and conclusory, lacking in specificity or detail, and unsupported by any documentary or affidavit evidence to allow these claims to proceed. <u>See</u> <u>generally</u> <u>Rish v. Johnson</u>, 131 F.3d 1092, 1096 (4th Cir. 1997) ["[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement"]; <u>Farmer</u>, 511 U.S. at 834-835 [noting that nothing in the evidence presented to the court showed that plaintiff was ever denied the minimal civilized measure of life's necessities, or that any defendant engaged in conduct "for the very purpose of causing harm or with the knowledge that harm [would] result"]; <u>cf</u>. <u>Beverati v. Smith</u>, 120 F.3d 500, 504 (4th Cir. 1977)[accepting Plaintiff's allegations for purposes of summary judgment that cells were unbearably hot, infested with vermin, smeared with human feces and urine, flooded with water from a leaky toilet above, and where food provided was cold and provided in smaller portions, but holding that such conditions were not "so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life."].

By reaching the conclusion that no compensable constitutional violation has been shown in the evidence, the undersigned does not intend to signal a lack of concern over Plaintiff's complaints. However, while Plaintiff may have some state law claim or administrative process he could pursue, absent some evidence of a significant injury suffered by the Plaintiff as a result of conditions deemed to be unconstitutional, or other accompanying factors not present in this case,



24

the undersigned does not find that Plaintiff has presented a genuine issue of fact as to whether his constitutional rights were violated during the time period he was incarcerated at the Edgefield County Detention Center sufficient to survive summary judgment.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; see Paul v. Davis, 424 U.S. 693, 701 (1976) [not every claim which may set forth a cause of action under a state tort law is sufficient to set forth a claim for a violation of a constitutional right].

### Conclusion

Based on the foregoing, it is recommended that the motions for summary judgment be **granted,** that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

April 22, 2013
Charleston, South Carolina

25



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

